UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **MARCY BLACKBURN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | No. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| **HEARTLAND FOOD LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Comes the Plaintiff, Marcy Blackburn ("Ms. Blackburn") and hereby complains against Defendant Heartland Food LLC ("Heartland") as follows:

## INTRODUCTION

1. Ms. Blackburn brings this action under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601-2654, following Heartland's refusal to restore her to employment after a period of approved FMLA leave.

## JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a)(2).

3. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b) because (1) Heartland "resides" in this district, (2) a substantial part of the events or omissions giving rise to the claim occurred in this district, and (3) Heartland is subject to this Court's personal jurisdiction.

## PARTIES

4. Ms. Blackburn is an adult citizen of Tennessee with her residence in Franklin, Tennessee.

5. Heartland is a limited liability company organized under the laws of Delaware with its principal offices at 1400 Opus Place, Suite 900, Downers Grove, Illinois 60515. Heartland currently operates over 20 Burger King restaurant franchises in the Nashville, Tennessee, area. Heartland maintains an agent for service of process at Corporation Service Company, 2908 Poston Avenue, Nashville, TN 37203-1312.

## FACTS

6. Until mid-August 2012, Burger King Corporation operated numerous fast food restaurants in the middle Tennessee area.

7. In 2005 or 2006, Burger King Corporation hired Ms. Blackburn as a crew member in Springfield, Tennessee. Ms. Blackburn left her employment at Burger King Corporation from approximately 2006 to 2009 to attend school. In or about September 2009, Burger King Corporation re-hired Ms. Blackburn as a crew member in Pulaski, Tennessee. Over the next few years, it promoted and transferred her several times.

8. In or about June 2012, Burger King Corporation transferred Ms. Blackburn to its location at Mallory Lane in Cool Springs, Tennessee, to be the general manager. As a general manager, Ms. Blackburn normally worked at least 40 hours per week.

9. For as long as Ms. Blackburn worked at the Mallory Lane location, Burger King Corporation employed well over 50 employees within 75 miles of the Mallory Lane location.

10. Ms. Blackburn became pregnant in or about the beginning of June 2012.

11. On July 2, 2012, Ms. Blackburn visited her obstetrician/gynecologist, Dr. J.T. Thomas. Dr. Thomas informed her that she was having an early miscarriage, or "chemical pregnancy," which was almost complete.

12. On July 16, 2012, Ms. Blackburn again visited Dr. Thomas. Dr. Thomas informed her on this visit that she had a new pregnancy. Because of her previous miscarriage, Dr. Thomas told her that she should only work 8 hours per day or 40 hours per week, with breaks.

13. Ms. Blackburn promptly informed her supervisor at Burger King Corporation, corporate branch manager April Smith, of her doctor's recommendation and asked for an accommodation to her work schedule. Ms. Smith said that Burger King Corporation could not make such an accommodation and that Ms. Blackburn needed to take a leave of absence. Ms. Smith referred Ms. Blackburn to Unum Group, which administered employee leaves for Burger King Corporation.

14. Ms. Blackburn's last day of work at Burger King Corporation was July 17, 2012. Burger King Corporation did not continue to pay wages to Ms. Blackburn after she went on leave.

15. At the time she began her leave, Ms. Blackburn had worked for Burger King Corporation for more than 12 consecutive months and had performed more than 1,250 hours of service during that time.

16. Ms. Blackburn visited Dr. Thomas's office several more times to receive treatment and examinations, including ultrasound examinations, to monitor the status of her pregnancy.

17. In a letter dated July 30, 2012, Unum Group told Ms. Blackburn that, if she were eligible under the FMLA, her leave would "automatically be approved for FMLA and/or state

leave protection" for the same period as her short-term disability leave—through January 15, 2013.

18. In mid-August 2012, while Ms. Blackburn was on approved FMLA leave, Heartland acquired over 20 Burger King franchises in the middle Tennessee area from Burger King Corporation, including the Mallory Lane location.

19. Burger King Corporation terminated all of the employees at the Mallory Lane location, including Ms. Blackburn. It sent a letter to Ms. Blackburn, telling her that she was terminated but that she could apply for employment at Heartland.

20. Following Heartland's purchase of the Mallory Lane location, business operations continued there in substantially the same form. Heartland continued doing business as a Burger King fast food restaurant. Upon information and belief, Heartland hired at least half of the employees who had worked for Burger King Corporation at the Mallory Lane location. Upon information and belief, the work duties and working conditions of these employees remained the same, as did the products being sold and the methods of operation.

21. On or about September 12, 2012, Ms. Blackburn visited Dr. Thomas. Dr. Thomas informed her that her pregnancy appeared normal and healthy. He also told her that she could return to work without any schedule limitations beginning on October 1, 2012.

22. On or about September 14, 2012, Ms. Blackburn registered on Heartland's Internet site and applied for re-employment.

23. After not receiving a response to her application, Ms. Blackburn sent a message to Heartland over its Internet site stating as follows: "I have been on short term disability, I recently put my application in over a week ago. My doctor has released me to go back to work on October 1, 2012. I need to know if Heartland Food Corp is going to let me return to work? Thanks Marcy Blackburn."

24. On September 26, 2012, a Heartland human resources official named Vanessa Alcorn e-mailed Ms. Blackburn, inviting her to contact Ms. Alcorn for further assistance.

25. Ms. Blackburn tried calling Ms. Alcorn and others in the Heartland human resources department numerous times; however, she did not get a response.

26. In a letter dated November 27, 2012, Unum Group informed Ms. Blackburn "of the updated [status] of her leave" and of "the corrected approval information regarding [her] request for leave." Unum Group stated that its previous letter was in error regarding FMLA leave. Unum Group stated that Ms. Blackburn would have used 12 weeks of FMLA leave as of October 9, 2012, but that, since Unum Group had sent an erroneous notice earlier, it was approving her for FMLA leave through November 27, 2012.

27. On November 28, 2012, Ms. Blackburn sent an e-mail informing Ms. Alcorn that she had been trying unsuccessfully to contact someone in human resources. Ms. Blackburn gave Ms. Alcorn her telephone number and stated, "I live alone and have no help. I need to return to work. Please Call Me."

28. The next day, November 29, 2012, Ms. Blackburn once again e-mailed Ms. Alcorn as follows: "Vanessa I have tried calling you past three days and emailed I haven't heard nothing [sic] back. I need to go back to work. Please get in touch with me."

29. In early December 2012, a woman identifying herself as a Heartland human resources official called Ms. Blackburn back and said that Heartland did not have to hire Ms. Blackburn because she did not work for Heartland when she went on leave.

30. Heartland has never restored Ms. Blackburn to employment in any capacity.

## COUNT I: DENIAL OF FMLA RIGHTS

31. Ms. Blackburn hereby re-alleges and incorporates each and every allegation set forth above as if fully set forth herein.

32. For as long as it employed Ms. Blackburn, Burger King Corporation was an "employer," as defined by 29 U.S.C. § 2611(4), because it engaged in commerce or an industry or activity affecting commerce and had employed 50 or more employees for each working day during 20 or more calendar workweeks in the current or preceding calendar year.

33. By purchasing the middle Tennessee franchises, including the Mallory Lane location, Heartland became a successor in interest to Burger King Corporation under 29 U.S.C. § 2611(4)(a)(ii)(II) and acted in the interest of Burger King Corporation toward Ms. Blackburn under 29 U.S.C. § 2611(4)(a)(ii)(I).

34. Ms. Blackburn was an eligible employee of Burger King Corporation, as defined by 29 U.S.C. § 2611(2).

35. Ms. Blackburn gave Burger King Corporation adequate notice of her doctor's recommendation that she limit her work schedule to 8 hours per day or 40 hours per week with breaks.

36. Pursuant to 29 U.S.C. § 2612(a)(1)(D), Ms. Blackburn was entitled to take FMLA leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."

37. By requiring Ms. Blackburn to completely leave work without any wages, as opposed to granting her reduced schedule FMLA leave, Burger King Corporation interfered with her FMLA rights under 29 U.S.C. § 2612(b)(1). As Burger King Corporation's successor in interest, Heartland is liable for this violation.

38. In addition, Heartland denied Ms. Blackburn her right to restoration under the FMLA. Prior to the expiration of her available FMLA leave, Ms. Blackburn was capable of returning to work as the general manager of the Mallory Lane location and repeatedly asked Heartland to allow her to return to work. Pursuant to 29 U.S.C. § 2614(a)(1), Ms. Blackburn was entitled to be restored to her previous position of employment or to an equivalent position. As Burger King Corporation's successor in interest, Heartland was responsible for restoring Ms. Blackburn to employment, but it refused to do so.

39. Upon information and belief, Burger King Corporation and Heartland committed these violations of the FMLA intentionally and/or recklessly.

## COUNT II: RETALIATION FOR EXERCISING FMLA RIGHTS

40. Ms. Blackburn hereby re-alleges and incorporates each and every allegation set forth above as if fully set forth herein.

41. Ms. Blackburn availed herself of rights protected by the FMLA when she notified Burger King Corporation of her need to take leave and when she actually took leave.

42. Ms. Blackburn suffered an adverse employment action when Burger King Corporation terminated her employment and Heartland refused to restore her.

43. In violation of 29 U.S.C. § 2615(a) and 29 C.F.R. § 825.220(c), Heartland retaliated against Ms. Blackburn by refusing to employ her due to her exercise of FMLA rights.

44. Heartland did not have a legitimate, nondiscriminatory rationale for refusing to employ Ms. Blackburn.

45. Upon information and belief, Heartland committed this violation of the FMLA intentionally and/or recklessly.

**WHEREFORE**, Ms. Blackburn prays for the following relief:

1. That service of process be had upon Heartland and that Heartland be required to appear and answer this complaint within the time prescribed by law;

2. A declaration of the rights and obligations of the parties under the FMLA;

3. An award of back pay, including lost wages and fringe benefits;

4. An award of actual monetary losses sustained as a result of the FMLA violations;

5. An award of liquidated damages;

6. An order restoring Ms. Blackburn to employment at Heartland or, in the alternative, an award of front pay;

7. An award of reasonable attorney's fees, pre-judgment interest, post-judgment interest, and the costs incurred in this action; and

8. All other relief, whether legal or equitable, as may be just and proper under the circumstances.

Dated: June 13, 2013            Respectfully submitted,

/s/ Michael J. Wall
James G. Stranch, III, TN# 2542
Michael J. Wall, TN# 24774
BRANSTETTER, STRANCH
    & JENNINGS, PLLC
227 Second Avenue North, Fourth Floor
Nashville, TN 37201-1631
Phone: (615) 254-8801
Fax: (615) 255-5419
jgs@branstetterlaw.com
mwall@branstetterlaw.com

*Counsel for Plaintiff*